USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/6/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x
                                    :
                                    .
UNITED STATES OF AMERICA            :
                                    :    ORDER
     - v. -                         :
                                    :    S1 19 Cr. 169 (VM)
ANGELA BOSQUEZ,                     :
                                    :
          Defendant.                :
                                    :
- - - - - - - - - - - - - - - - - -x

WHEREAS, with the consent of the defendant, ANGELA
BOSQUEZ, her guilty plea allocution was taken before a United
States Magistrate Judge on December 26, 2019; and

WHEREAS, a transcript of the allocution was made and
thereafter was transmitted to the District Court; and

WHEREAS, upon review of that transcript, this Court has
determined that the defendant entered the guilty plea knowingly
and voluntarily and that there was a factual basis for the guilty
plea;

IT IS HEREBY ORDERED that the defendant's guilty plea is
accepted.

SO ORDERED:

Dated:    New York, New York
          6 January 2020

                    THE HONORABLE VICTOR MARRERO
                    UNITED STATES DISTRICT JUDGE
                    SOUTHERN DISTRICT OF NEW YORK

JCQAABOSP                           Plea

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                v.                           19 CR 169 (BCM)

5    ANGELA BOSQUEZ,

6                     Defendant.

7    ------------------------------x

8                                            New York, N.Y.
                                             December 26, 2019
9                                            11:40 a.m.

10
     Before:
11
                        HON. BARBARA C. MOSES,
12
                                             District Judge
13

14                .              APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     JUSTIN RODRIQUEZ
17        Assistant United States Attorney

18   RICHARD LIND
          Attorney for Defendant Bosquez
19

20

21

22   ALSO PRESENT:  FRANCISCO OLIVERO, Spanish Language Interpreter

23

24

25

JCQAABOSP                    Plea

1        (Case called)

2        MR. RODRIQUEZ: Good morning, your Honor.

3        Justin Rodriguez, for the United States.

4        THE COURT: Good morning, Mr. Rodriguez.

5        MR. LIND: Good morning, your Honor.

6        Richard Lind, for the defendant Angela Bosquez, who

7   standing next to me.

8        THE COURT: Good morning, Mr. Lind, Ms. Bosquez.

9        You may be seated.

10       Ms. Bosquez, I am Magistrate Judge Moses. Are you

11   able to hear and understand our proceedings through the

12   interpreter?

13       THE DEFENDANT: Yes.

14       THE COURT: Thank you.

15       I understand that we are here for a change of plea,

16   counsel. I am informed that Ms. Bosquez having previously

17   pleaded not guilty now wishes to plead guilty to Count One of

18   the information in this matter.

19       Mr. Lind, is that correct?

20       MR. LIND: That's correct, your Honor.

21       THE COURT: Thank you very much.

22       Ms. Bosquez, I am holding up a form called "Consent to

23   Proceed Before a United States Magistrate Judge on a Felony

24   Plea Allocution". That looks like your signature at the

25   bottom.

JCQAABOSP                    Plea

1           Did you sign this form?

2           THE DEFENDANT: Yes.

3           THE COURT: What this form says is that you have the

4    right to have your plea taken by a United States district judge

5    but you're agreeing to have your plea taken by a United States

6    magistrate judge such as myself, a magistrate judge with

7    authority to take your plea with your consent and you have all

8    of the same rights and protections as if you were before a

9    district judge. If you are found guilty you will be sentenced

10   by the district judge assigned to your case.

11          Did you sign this consent form voluntarily?

12          THE DEFENDANT: Yes.

13          THE COURT: Before you signed the form, did your

14   lawyer explain it to you?

15          THE DEFENDANT: Yes.

16          THE COURT: Do you wish to proceed with your plea in

17   my courtroom today?

18          · THE DEFENDANT: Yes.

19          THE COURT: I will accept your consent.

20          As you heard me say to your lawyer, it's my

21   understanding that you want to change your plea and enter a

22   plea of guilty to Count One of the information in this action.

23          Is that correct?

24          THE DEFENDANT: Yes.

25          THE COURT: Now before deciding whether to accept your

JCQAABOSP                    Plea

1   guilty plea, I am going to ask you a series of questions. It's

2   important that you answer my questions honestly and completely.

3   The purpose of the questions is to make sure that you

4   understand your rights, to make sure you are pleading guilty of

5   your own free will and to make sure that you are pleading

6   guilty because you are guilty and not for any other reason.

7           Do you understand what I'm saying?

8           THE DEFENDANT: Yes, your Honor.

9           THE COURT: OK. If you don't understand any of the

10  questions I ask you or if you want time to consult with your

11  attorney, please, speak up and let me know. It is important

12  that you understand every question before you answer it.

13          Are you ready?

14          THE DEFENDANT: Yes, your Honor.

15          THE COURT: I will ask the courtroom deputy to swear

16  the defendant.

17          (Defendant Angela Bosquez sworn)

18          THE COURT: All right. Ms. Bosquez, you are now under

19  oath. What that means, among other things, is that if you

20  intentionally give a false answer to any of my questions you

21  could be prosecuted for perjury.

22          Do you understand that?

23          THE DEFENDANT: Yes, your Honor.

24          THE COURT: All right. Please state your full name.

25          THE DEFENDANT: Angela Bosquez.

1         THE COURT:  Is there a second part of your last name?

2         THE DEFENDANT:  Roque, R-O-Q-U-E.

3         THE COURT:  Is it all right for me to call you

4    "Ms. Bosquez"?

5         THE DEFENDANT:  Yes, your Honor.

6         THE COURT:  All right.  How old are you, Ms. Bosquez?

7    ·    THE DEFENDANT:  52.

8         THE COURT:  Are you a citizen of the United States?

9         THE DEFENDANT:  Yes, your Honor.

10        THE COURT:  Were you born here or were you a

11   naturalized citizen?

12        THE DEFENDANT:  No.  I was born in Puerto Rico.

13        THE COURT:  In the United States.  Thank you.

14        How far did you go in school?

15        THE DEFENDANT:  I finished my GED.

16        THE COURT:  You got a GED.  OK.  Can you read and

17   write in Spanish?

18        THE DEFENDANT:  Yes.

19        THE COURT:  How about in English?

20        THE DEFENDANT:  Not much.

21        THE COURT:  Not much in English, all right.

22        Are you now or have you recently been under the care

23   of a doctor, a psychiatrist or a psychologist for any reason?

24        THE DEFENDANT:  Yes, your Honor.

25        THE COURT:  OK.  Which one of those kinds of doctors?

JCQAABOSP                   Plea

1          THE DEFENDANT:  I am receiving drug treatment and I am

2     receiving treatment by a psychiatrist.

3          THE COURT:  So you are seeing a psychiatrist as part

4     of your drug treatment?

5          THE DEFENDANT:  I have an illness.  I am bipolar and

6     have depression.

7          THE COURT:  Does the psychiatrist that you are seeing

8     treat those conditions as well?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  OK.  Are you taking any medication

11     prescribed by the psychiatrist?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  And what are those?

14          THE DEFENDANT:  Arizapole, Trazodone, Bupropion.

15          THE COURT:  Bupropion, if I recall correctly, is an

16     antianxiety drug; is that right?

17          THE DEFENDANT:  I suffer from anxiety.

18          THE COURT:  And trazodone is for your bipolar

19     symptoms?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  And the other one you mentioned was called

22     Arizapole; am I saying it right?

23          THE DEFENDANT:  For depression.

24          THE COURT:  Do you have any condition that you haven't

25     mentioned yet that affects your ability to see or to hear?

JCQAABOSP                    Plea

 1             THE DEFENDANT: No.

 2             THE COURT: Do you have any condition that you haven't

 3    mentioned yet that affects your ability to think or to

 4    understand or to make judgments or decisions on your own

 5    behalf?

 6             THE DEFENDANT: I am unable to concentrate much.

 7             THE COURT: OK. Why is that, ma'am?

 8             THE DEFENDANT: My mind is like that I don't --

 9             THE COURT: OK. Have you taken your prescribed

10    medications today or last night? I don't know what time you

11    are supposed to take them.

12             THE DEFENDANT: I took them last night.

13             THE COURT: OK. And that's when they.were prescribed

14    for you to take?

15             THE DEFENDANT: Yes, your Honor.

16             THE COURT: Other than your prescribed medications,

17    have you taken any drugs, medicine or pills in the last 24

18    hours?

19             THE DEFENDANT: No. I have methadone medication.

20             THE COURT: So you also took your methadone?

21             THE DEFENDANT: Yes, your Honor.

22             THE COURT: Is that prescribed by a doctor?

23             THE DEFENDANT: Yes, your Honor.

24             THE COURT: OK. When did you take that?

25             THE DEFENDANT: Today.

1           THE COURT:  This morning.

2           THE DEFENDANT:  Yes, everyday.

3           THE COURT:  OK.  So last night you took your

4   Arizapole, your Trazodone and your Buproprion?

5           THE DEFENDANT:  Yes, your Honor.

6           THE COURT:  As prescribed?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  And this morning you took your methadone

9   as prescribed?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Any other drugs, medicine or pills in the

12  last 24 hours?

13          THE DEFENDANT:  No, your Honor.

14          THE COURT:  All right.  Do any of the drugs that were

15  prescribed to you affect your ability to think or to understand

16  or to make decisions on your own behalf?

17          THE DEFENDANT:  No, your Honor.

18          THE COURT:  OK.  Is your mind clear today?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Do you understand what is happening in

21  this proceeding?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Does either counsel have any objection to

24  the defendant's competence to plead?

25          MR. RODRIQUEZ:  No, your Honor.

JCQAABOSP                    Plea

1          MR. LIND: No, your Honor.

2          THE COURT: Very well. Ms. Bosquez, have you received

3    a copy of the information in your case? The information is the

4    document containing the legal charge against you.

5          THE DEFENDANT: Yes, your Honor.

6          THE COURT: Have you read it? Well, let me rephrase.

7    Has it been translated into Spanish for you?

8          THE DEFENDANT: Yes, your Honor.

9          THE COURT: Did you read it in translation or did

10   someone read it to you in Spanish?

11         THE DEFENDANT: Someone read it to me in Spanish.

12         THE COURT: All right. Do you understand what it says

13   you did?

14         THE DEFENDANT: Yes, your Honor.

15         THE COURT: Do you want me to read it to you today?

16         THE DEFENDANT: Yes, your Honor.

17         THE COURT: All right.

18         THE DEFENDANT: No. I'm sorry. I don't understand.

19         THE COURT: That's up to you. If you would like me to

20   read it to you I will read it to you and the translator will

21   translate it today.

22         THE DEFENDANT: No. It was translated for me.

23         Thank you.

24         THE COURT: All right. So I will not read it to you

25   today. If you change your mind, let me know.

JCQAABOSP                    Plea

1         Have you had time to talk to your attorney about the

2    charge against you and about how you wish to plead?

3         THE DEFENDANT: Yes, your Honor.

4         THE COURT: Has your attorney explained the

5    consequences of pleading guilty?

6         THE DEFENDANT: Yes, your Honor.

7         THE COURT: Are you satisfied so far with your

8    attorney's representation of you?

9         THE DEFENDANT: Yes, your Honor.

10        THE COURT: What I'm going to do next is I am going to

11   explain certain constitutional rights that you have but that

12   you will be giving up if you enter a guilty plea. So I want

13   you to listen carefully to what I am going to tell you. If you

14   don't understand something I say, stop me, and either I or your

15   attorney will explain the issue more fully.

16        THE DEFENDANT: Yes, your Honor.

17        THE COURT: Under the Constitution and laws of the

18   United States, you have a right to plead not guilty to the

19   charges contained in the information.

20        Do you understand that.

21        THE DEFENDANT: Yes, your Honor.

22        THE COURT: If you plead not guilty you'll be entitled

23   under the Constitution and laws of the United States to a

24   speedy and public trial by a jury of those charges. At trial

25   you would be presumed innocent. The government would be

1  required to prove you guilty beyond a reasonable doubt before
2  you could be found guilty. You could not be convicted unless a
3  jury of 12 people agreed unanimously that you were guilty
4  beyond a reasonable doubt.

5            Do you understand that?

6            THE DEFENDANT: Yes, your Honor.

7            THE COURT: If you went to trial, then at that trial
8  and at every stage of your case you'd have the right to be
9  represented by an attorney. If you could not afford an
10  attorney, an attorney would be appointed to represent you at
11  government expense. Even if you decided to retain private
12  defense counsel but later ran out of money, you'd be entitled
13  to an appointed attorney then to continue to represent you.
14  You are entitled to an attorney all they through and not just
15  for a guilty plea. So your decision to plead guilty should not
16  depend on whether you could afford to hire a lawyer.

17            Do you understand that?

18            THE DEFENDANT: Yes, your Honor.

19            THE COURT: At trial the witnesses for the prosecution
20  would have to come to court and testify in your presence where
21  you could see them and hear them and your lawyer could
22  cross-examine them. If you wanted, your lawyer could offer
23  evidence on your behalf as well. Your lawyer would be able to
24  use the Court's power known as subpoena power to compel
25  witnesses to come to court even if they didn't want to.

JCQAABOSP                    Plea

1           Do you understand that?

2           THE DEFENDANT: Yes, your Honor.

3           THE COURT: If you were convicted at trial you would

4    have the right to appeal that verdict to a higher court.

5           Do you understand that?

6           THE DEFENDANT: Yes, your Honor.

7           THE COURT: And as I said before, you have the right

8    to plead not guilty. Even today although you came to court for

9    the purpose of entering a guilty plea you have the right to

10   change your mind to persist in your not guilty plea and to

11   proceed towards trial but if you do plead guilty and if the

12   Court accepts your plea, you will give up the right to trial

13   and the rights that go with this that I've just described to

14   you. If you plead guilty there will not be any trial. All

15   that will remain to be done would be to impose a sentence. You

16   and the government will have a chance to make certain arguments

17   about what sentence will be but there won't be a trial to

18   determine whether you were guilty or not guilty of any charge

19   to which you plead guilty.

20          Do you understand that?

21          THE DEFENDANT: Yes, your Honor.

22          THE COURT: Do you also understand that the decision

23   as to the appropriate sentence in your case will be entirely up

24   to the sentencing judge, not the government, not your lawyer

25   and not me. That judge will be limited only by what the law

1    requires.

2         THE DEFENDANT:  Yes, your Honor.

3         THE COURT:  What that means is even if you are

4    surprised or disappointed by your sentence you will still be

5    bound by your guilty plea.

6         Do you understand that?

7         THE DEFENDANT:  Yes, your Honor.

8         THE COURT:  Finally, if you do plead guilty you are

9    giving up the right not to incriminate yourself.  I will ask

10   you questions about what you did in order to satisfy myself

11   that you're actually guilty.  So by pleading guilty you will be

12   admitting your factual, as well as your legal guilt.

13        Do you understand that?

14        THE DEFENDANT:  Yes, your Honor.

15        THE COURT:  I need to go back for a moment because I

16   just realized that I forgot to tell you about your testimonial

17   rights.  So let me just revisit that for a moment.  If you go

18   to trial you'd have the right to testify in your own defense if

19   you wished to do so but you would also have the right not to

20   testify.  If you chose not to testify that could not be used

21   against you in any way.  No inference or suggestion of guilt

22   would be permitted from the fact that you did not testify.  Do

23   you understand that this is that right that you have but that

24   you'll be giving up if you enter a plea of guilty?

25        THE DEFENDANT:  Yes, your Honor.

JCQAABOSP                    Plea

1          THE COURT: All right. So taking a look at the

2     information in your case, the document I mentioned just a

3     moment ago, I see that you are charged in Count One with

4     conspiracy to distribute and to possess with intent to

5     distribute the following narcotics.

6          First, mixtures and substances containing a detectable

7     amount of fentanyl.

8          Second, mixtures and substance containing a detectable

9     amount of heroin.

10          Third, mixtures and substances containing a detectable

11    amount of cocaine, all in violation of Title 21 of U.S.C.

12    Sections 841(b)(1)(c) and 846.

13          I am going to ask the Assistant United States Attorney

14    to state the elements of that charge. The elements are the

15    things that the government would have to prove beyond a

16    reasonable doubt at trial.

17          Mr. Rodriguez.

18          MR. RODRIQUEZ: Count One has two elements, your

19    Honor.

20          First, that two or more people agreed to distribute or

21    possess with intent to distribute a quantity of mixtures and

22    substances containing a detectable amount of either fentanyl,

23    heroin or cocaine.

24          Second, that the defendant knowingly and voluntarily

25    joined that agreement.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

JCQAABOSP                    Plea

1          THE COURT: And the venue element?

2          MR. RODRIQUEZ: The government would also have to

3    prove by a preponderance of the evidence that at trial that

4    venue is proper here in the Southern District of New York.

5          THE COURT: Thank you, Mr. Rodriguez.

6          Ms. Bosquez, I am now going to tell you the maximum

7    possible penalty for the crime charged in Count One. "Maximum"

8    means "the most", the most that could be imposed. It does not

9    mean that this is necessarily what you will receive but by

10   pleading guilty you will be exposing yourself to a possibility

11   of receiving a punishment up to the maximum that I am about to

12   describe.

13         Do you understand that?

14         THE DEFENDANT: Yes, your Honor.

15         THE COURT: The maximum term of imprisonment for the

16   crime charged in Count One is 20 years in prison which could be

17   followed by up to a lifetime on supervised release.

18         Now if your sentence does include supervised release

19   you'll be subject to supervision by our probation department

20   after you're released from prison. If you were to violate any

21   condition of that supervised release, the Court could revoke

22   the term of supervised release previously imposed and return

23   you to prison without giving you time for credit previously

24   served on post release supervision.

25         Count One also carries a mandatory minimum sentence.

1   In this case a mandatory minimum of three years of supervised

2   release.  A "mandatory minimum" means that the sentencing judge

3   cannot give you less than that.

4          In addition to those restrictions on your liberty, the

5   maximum possible punishment for the crime charged in Count One

6   includes a financial penalty.  The maximum allowable fine is $1

7   million or twice the profits of the criminal activity or twice

8   what someone other than yourself lost because of criminal

9   activity whichever is greater.

10         In addition, by pleading guilty you will admit to the

11  forfeiture allegations in the indictment -- excuse me -- the

12  information and will agree to forfeit any property within the

13  scope of Title 21 of U.S.C. Section 853.

14         I am also required by law to tell you that there is an

15  additional special assessment of $100 which is required to be

16  imposed on each count of conviction.

17         Now you told me a few minutes ago that you are a U.S.

18  citizen, correct?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  The reason I ask that question is because

21  if you were not a citizen your guilty plea would likely have

22  adverse consequences for your ability to remain in or return to

23  the United States.  And I am required to advise all defendants

24  of these consequence even if they tell me they are U.S.

25  citizens.  These consequences could include removal,

JCQAABOSP                  Plea

1    deportation, denial of citizenship or denial of admission to

2    the United States in the future. Your removal or deportation

3    could be mandatory and if that did happen you could still be

4    bound by your guilty plea. That is you would not be able to

5    withdraw it. Regardless of any advice you received from your

6    counsel or others regarding immigration consequences of the

7    plea.

8                Do you understand what I have told you?

9                THE DEFENDANT: Yes, your Honor.

10               THE COURT: All right. Now, I understand that there

11   is a written plea agreement between you and the government. It

12   is being handed to me now.

13               (Pause)

14               THE COURT: It is dated December the 17th. It's a

15   letter dated December the 17th, addressed to your attorney,

16   Mr. Lind. Let me look at the last page. It appears to have

17   your signature on the last page which I am holding up.

18               Did you sign this plea agreement, ma'am?

19               THE DEFENDANT: Yes, your Honor.

20               THE COURT: Did someone read it to you in Spanish

21   before you signed it?

22               THE DEFENDANT: Yes, your Honor.

23               THE COURT: All right. Do you understand what it

24   says?

25               THE DEFENDANT: Yes, your Honor.

1          THE COURT:  Did you discuss it with your attorney?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Has anyone promised you anything or

4    offered you anything to get you to plead guilty other than what

5    is in this written plea agreement?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  Everything is in the letter?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  All right.  Looking at the letter, I see

10   on page 4 --

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  That you and the government have reached

13   agreement regarding the appropriate calculation of your

14   sentence under a part of our law known as the sentencing

15   guidelines.  Specifically, I see that you and the government

16   have agreed that the appropriate guidelines sentencing range

17   for you is from 151 months to 188 months in prison and that the

18   appropriate monetary guideline range for you under the

19   guidelines is from 30,000 to $1 million.

20         Is that correct?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Do you understand that under this

23   agreement neither you nor the government is allowed to argue to

24   the sentencing judge for a guidelines calculation which is

25   different from the one set forth in your written plea

JCQAABOSP                    Plea

1   agreement?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Do you also understand that in this

4   agreement you have limited your right to appeal in certain

5   respects from any sentence that may be imposed specifically as

6   long as the sentencing judge gives you a prison term no longer

7   than 188 months, any lawful sentence of supervised release and

8   a fine no greater than a million dollars.  You are giving up

9   your right to challenge your sentence whether by direct appeal,

10  writ of habeas corpus or otherwise.

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  You understand that last part I said if

13  you get a sentence of less than or equal to 188 months you

14  can't appeal your sentence; do you understand that?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  OK.  Do you also understand that under the

17  terms of your plea agreement, even if you later learn that the

18  government withheld from your counsel certain information that

19  would have been helpful to you in defending yourself at trial,

20  you won't be able to complain about that or withdraw your

21  guilty plea for that reason?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Do you understand that the terms of your

24  plea agreement, including any calculations relating to

25  sentencing are not binding on the sentencing judge?

JCQAABOSP                    Plea

1      THE DEFENDANT: Yes, your Honor.

2      THE COURT: The sentencing judge could reject those

3   calculations and could impose a more severe sentence than you

4   expect without permitting you to withdraw your plea of guilty.

5   That is because the sentencing judge is required to make his

6   own independent calculation of the appropriate sentencing range

7   under the guidelines. He'll also have the discretion to give

8   you a sentence below that range or above that range up to the

9   maximum sentence I told you about earlier.

10      In addition to the guidelines and possible departures

11  from the guidelines, the sentencing judge will consider the

12  factors set forth at 18 U.S.C. Section 3553(a). In other

13  words, the sentencing judge will pronounce whatever sentence he

14  believes is the appropriate sentence for you even if that

15  sentence is different from the range set forth in your plea

16  agreement.

17      Do you understand that?

18      THE DEFENDANT: Yes, your Honor.

19      THE COURT: In addition, the sentencing judge will

20  consider a presentence report that will be prepared by the

21  probation department. Before you are sentenced both you and

22  the government will have the opportunity to review that report

23  and challenge the facts which are purported by the probation

24  officer.

25      Ms. Bosquez, do you understand that in the federal

JCQAABOSP                    Plea

1   sentence there is no parole?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  So if you are sentenced to prison you will

4   not be released on parole.

5          Let me ask both counsel at this juncture starting with

6   the Assistant U.S. Attorney if there are any other provisions

7   in the plea agreement you would like me to go over?

8          MR. RODRIQUEZ:  No, your Honor.

9          THE COURT:  Mr. Lind?

10         MR. LIND:  No, judge.

11         THE COURT:  All right.  Ms. Bosquez, one more time,

12  because it's an important question.  Aside from what's in the

13  plea agreement itself, have any promises been made to you to

14  influence you to plead guilty?

15         THE DEFENDANT:  No, your Honor.

16         THE COURT:  Have any promises been made to you

17  concerning the actual sentence you will receive?

18         THE DEFENDANT:  No, your Honor.

19         THE COURT:  All right.  Ma'am, you have been advised

20  of the charges against you the possible penalties you face and

21  the rights you are giving up.  Do still wish to plead guilty to

22  Count One?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Is your plea voluntary and made of your

25  own free will.

JCQAABOSP                    Plea

1        THE DEFENDANT:  Yes, your Honor.

2        THE COURT:  Ms. Bosquez, with respect to Count One of

3   the information in your case, how do you plead, guilty or not

4   guilty?

5        THE DEFENDANT:  Guilty.

6        THE COURT:  Can you tell me in your own words please,

7   what you did that makes you guilty of that conduct.

8        MR. LIND:  May I have one moment, judge, just to

9   clarify that with her?

10        THE COURT:  Yes.

11        (Pause)

12        THE COURT:  Counsel, is your client ready?

13        MR. LIND:  Yes, judge.

14        THE COURT:  Ms. Bosquez, the question was please tell

15   me what you did that makes you guilty of the crime to which you

16   are pleading guilty.

17        THE DEFENDANT:  I conspired with other persons to

18   distribute drugs, fentanyl, cocaine and that is against the

19   law.  That was in 2018, yes.

20        THE COURT:  OK.  You mentioned had fentanyl and

21   cocaine?

22        THE DEFENDANT:  Yes, your Honor.

23        THE COURT:  Were any other drugs involved in the

24   conspiracy that you just told me about?

25        THE DEFENDANT:  Cocaine.

JCQAABOSP                    Plea

1           THE COURT: Anything else?

2           THE DEFENDANT: Nothing else. Fentanyl, cocaine and

3    heroin.

4           THE COURT: Fentanyl, cocaine and heroin, all right.

5           And you say this took place in 2018?

6           THE DEFENDANT: Yes, urge.

7           THE COURT: And you said that you entered into a

8    conspiracy. Does that mean that you agreed with one or more

9    than one other persons to sell these drugs?

10          THE DEFENDANT: Yes, your Honor.

11          THE COURT: OK. And where did this happen?

12          THE DEFENDANT: In the Bronx.

13          THE COURT: In Bronx, New York.

14          THE DEFENDANT: (Nodding).

15          THE COURT: All right. And at the time you entered

16   into this agreement to sell cocaine, fentanyl and heroin, did

17   you know that what you were doing was against the law?

18          THE DEFENDANT: Yes, I knew it. I didn't think about

19   it but I knew it.

20          THE COURT: All right. Now, I see that you have some

21   notes in front of you. Did your attorney help prepare those

22   notes that you used?

23          THE DEFENDANT: Yes, your Honor.

24          THE COURT: OK. Is everything that you've just told

25   me true?

1          THE DEFENDANT: Yes, your Honor.

2          THE COURT: Did you know at the time you entered into

3   this conspiracy that what you were doing was wrong?

4          THE DEFENDANT: Yes, your Honor.

5          THE COURT: All right. Mr. Rodriguez, do you believe

6   that is a sufficient factual predicate for the plea?

7          MR. RODRIQUEZ: Yes, your Honor.

8          THE COURT: Are there any additional questions would

9   you like me to ask Ms. Bosquez?

10         MR. RODRIQUEZ: No, your Honor.

11         THE COURT: Does the government represent that this is

12  sufficient evidence to establish guilt beyond a reasonable

13  doubt and would you like to make a proffer?

14         MR. RODRIQUEZ: Yes, your Honor.

15         The government would proffer that its evidence at

16  trial would establish that the defendant participated in a

17  conspiracy to distribute narcotics out of a diner in the Bronx

18  over the course of 2018. Its proof would include, among other

19  things, the following video and audio recorded purchases of

20  substances containing detectable amounts of fentanyl, heroin

21  and cocaine by undercover officers from the defendant, as well

22  as her co-conspirators, the testimony of law enforcement

23  officers, including undercover officers, as well as laboratory

24  results related to the substances purchased by undercover

25  officers.

JCQAABOSP                    Plea

1           THE COURT: Thank you, counsel.

2           All right.  Ms. Bosquez, on the basis of your

3   responses to my questions and my observation of your demeanor,

4   I find that you are competent to enter a guilty plea.

5           I am satisfied that you understand your rights,

6   including your right to go to trial, and that you are aware of

7   the consequences of your plea including the sentence that may

8   be imposed.  I also conclude that you are voluntarily pleading

9   guilty and that you have admitted that you are guilty as

10  charged in Count One of the information.  For these reasons I

11  will recommend that the district judge accept your plea.

12          This is Judge Marrero's case, correct?

13          MR. RODRIQUEZ: Yes, your Honor.

14          THE COURT: All right.  I will ask the government to

15  order a copy of the transcript, to submit it to Judge Marrero

16  together with the additional paperwork he'll need to act on my

17  recommendation.

18          Has he set is a sentencing date?

19          MR. RODRIQUEZ: He has not, your Honor.  We'd ask the

20  Court to set a three-month control date.

21          COURTROOM DEPUTY: April 25, 2020.

22          THE COURT: Ordinarily, we would do six months with

23  the defendant out of custody.  Do you have a reason or seeking

24  a shorter control date?

25          MR. RODRIQUEZ: No, your Honor.  Whatever the Court

JCQAABOSP                    Plea

1    would do in the ordinary course.

2         THE COURT: April 25, 2020 is your control date. Now

3    the district judge may set a different sentencing date. So you

4    need to be in touch with the district judge or that I will

5    direct that the presentence report be prepared.

6         Mr. Rodriguez, could you deliver the case summary to

7    the probation department?

8         MR. RODRIQUEZ: Yes, your Honor.

9         THE COURT: Ordinarily, I say within the next two

10   weeks but we're still in the holiday season.

11        MR. RODRIQUEZ: Thank you, your Honor.

12        THE COURT: Mr. Lind, can you be available for

13   interview by the probation department within the next few

14   weeks?

15        MR. LIND: Yes, your Honor.

16        THE COURT: Now I understand Ms. Bosquez is released

17   on bail. Are there any objections to continuing the present

18   bail?

19        MR. RODRIQUEZ: No, your Honor.

20        THE COURT: All right. Ms. Bosquez, you will remain

21   released on the same bail conditions. I want to stress to you,

22   ma'am, that all of the conditions on which you were released up

23   until now continue to apply. In addition, any violation of

24   those conditions as you've previously been warned would have

25   very serious consequences, including revocation of bail and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

JCQAABOSP                    Plea

1   potentially prosecution for a new crime called bail jumping.

2              Do you understand that?

3              THE DEFENDANT: Yes, your Honor.

4              THE COURT: All right. Anything further on this

5   matter from the government?

6              MR. RODRIQUEZ: No, your Honor.

7              THE COURT: From the defense.

8              MR. LIND: No, your Honor.

9              Thank you very much.

10             THE COURT: Thank you, ladies and gentlemen.

11             (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25



ORIGINAL

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 17, 2019

**BY EMAIL**

Richard Bruce Lind
Richard Lind Attorney at Law
575 Lexington Ave
New York, NY 10022
(212) 888-7725
Fax: (212) 371-2961
Email: rlindesq@aol.com

### Re: *United States v. Angela Bosquez*, S1 19 Cr. 169 (VM)

Dear Mr. Lind:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Angela Bosquez ("the defendant") to Count One of the above-referenced Information (the "Information"). Count One charges the defendant with conspiracy to distribute and possess with intent to distribute mixtures and substances containing a detectable amount of fentanyl, mixtures and substances containing a detectable amount of heroin, and mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 841(b)(1)(C) and 846. This charge carries a maximum term of imprisonment of 20 years; a maximum term of supervised release of life; a mandatory minimum term of supervised release of three years; a maximum fine, pursuant to Title 18, United States Code, Section 3571 and Title 21, United States Code, Section 841(b)(1)(C), of the greatest of $1,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for conspiring to distribute and possess with intent to distribute fentanyl, heroin, and cocaine from in or about January 2018 through in or about January 2019, as charged in Count One of the Information, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges she is not a "prevailing party" within the meaning of the "Hyde

2019.07.08

Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant hereby admits the forfeiture allegation with respect to Count One of the Information and agrees to forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offense and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense. It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon her in addition to forfeiture.

A. Offense Level

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

A. Offense Level

1. The applicable Guidelines manual is the November 1, 2018 edition.

2. The Guideline applicable to Count One is U.S.S.G. § 2D1.1. Pursuant to U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(14), the base offense level is 12 because the offense involved less than 4 grams of fentanyl.

3. Pursuant to U.S.S.G. § 4B1.1(a), the defendant is a career offender because (1) she was at least eighteen years old at the time she committed the instant offense; (2) the offense charged in Count One is a felony that is a controlled substance offense; and (3) the defendant has at least two prior felony convictions for crimes of violence or controlled substance offenses, to wit, (a) on or about April 15, 1998, the defendant was convicted in Bronx County Supreme Court of Criminal Sale of a Controlled Substance on School Grounds, in violation of New York Penal Law § 220.44(2); and (b) on or about April 15, 1998, the defendant was convicted in Bronx County Supreme Court of Criminal Sale of a Controlled Substance on School Grounds, in violation of New York Penal Law § 220.44(2).

4. Pursuant to U.S.S.G. § 4B1.1(b)(3), the total offense level for Count One is 32 because the statutory maximum sentence for the offense charged in Count One is 20 years or more, but less than 25 years' imprisonment.

5. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through her allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an

additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 29.

B. Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has ten criminal history points, calculated as follows:

1. On or about April 24, 2015, the defendant was convicted in Bronx County Supreme Court of Criminal Possession of a Controlled Substance in the Seventh Degree, in violation of New York Penal Law § 220.03. The defendant was later sentenced to a conditional discharge. Pursuant to U.S.S.G. § 4A1.1(c), this sentence receives one criminal history point.

2. On or about January 28, 2003, the defendant was convicted in Bronx County Supreme Court of Attempted Promoting Prison Contraband in the First Degree, in violation of New York Penal Law § 205.25. The defendant was later sentenced to a term of imprisonment of 18 months to three years. The defendant was admitted to prison on March 12, 2003 and released on parole on June 17, 2004. Pursuant to U.S.S.G. §§ 4A1.1(a) and 4A1.2(e)(1), this sentence receives three criminal history points.

3. On or about April 15, 1998, the defendant was convicted in Bronx County Supreme Court of Criminal Sale of a Controlled Substance on School Grounds, in violation of New York Penal Law § 220.44(2). The defendant committed the offense on January 26, 1998 and was arrested on January 26, 1998. The defendant was sentenced on April 15, 1998 to two to six years of imprisonment. The defendant was in prison from April 28, 1998 until August 27, 1999 when she was released on parole. The defendant then returned to prison on March 12, 2003 for violating parole in connection with the offense described in Paragraph B.2 above. The defendant was then released from prison again on parole on June 17, 2004. Pursuant to U.S.S.G. §§ 4A1.1(a), 4A1.2(a)(2), 4A1.2(e)(1), and 4A1.2(k), this sentence receives three criminal history points.

4. On or about April 15, 1998, the defendant was convicted in Bronx County Supreme Court of Criminal Sale of a Controlled Substance on School Grounds, in violation of New York Penal Law § 220.44(2). The defendant committed the offense on November 15, 1997 and was arrested on November 15, 1997. The defendant was sentenced on April 15, 1998 to two to six years of imprisonment. The defendant was in prison from April 28, 1998 until August 27, 1999 when she was released on parole. The defendant then returned to prison on March 12, 2003 for violating parole in connection with the offense described in Paragraph B.2 above. The defendant was then released from prison again on parole on June 17, 2004. Pursuant to U.S.S.G. §§ 4A1.1(a), 4A1.2(a)(2), 4A1.2(e)(1), and 4A1.2(k), this sentence receives three criminal history points.

Based on the defendant's criminal history points, her Criminal History Category is V. Because the defendant is a career offender pursuant to U.S.S.G. § 4B1.1(b), she is in Criminal History Category VI.

C. Sentencing Range

Based upon the calculations set forth above, the defendant's stipulated Guidelines range is 151 to 188 months' imprisonment (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 29, the applicable fine range is $30,000 to $1,000,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through her allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from

those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that her entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw her plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 151 to 188 months' imprisonment, and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine that is less than or equal to $1,000,000, and the Government agrees not to appeal any fine that is greater than or equal to $30,000. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that she has accepted this Agreement and decided to plead guilty because she is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw her plea or to attack her conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if she is not a citizen of the United States, her guilty plea and conviction make it very likely that her removal from the United States is presumptively mandatory and that, at a minimum, she is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, she recognizes that pleading guilty may have consequences with respect to the defendant's

immigration status. For example, under federal law, an individual may be subject to denaturalization and removal if her naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant acknowledges that she has discussed the possible immigration consequences (including removal or denaturalization) of her guilty plea and conviction with defense counsel. The defendant affirms that she wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including her attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw her guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge her conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from her guilty plea and conviction.

It is further agreed that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

2019.07.08

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

GEOFFREY S. BERMAN
United States Attorney

By: _____

Justin V. Rodriguez / Sheb Swett
Assistant United States Attorney
(212) 637-2591 / 6522

APPROVED:

_____

George D. Turner / Jason M. Swergold
Chiefs, Narcotics Unit

AGREED AND CONSENTED TO:

_____
Angela Bosquez

_____
DATE  12/26/19

APPROVED:

_____
Richard Bruce Lind , Esq.
Attorney for Angela Bosquez

_____
DATE  12/26/19